IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

WAYLAND GIBSON,

Defendant.

No. CR 11-00734 WHA

**ORDER DENYING MOTION TO DISMISS THE INDICTMENT**

## INTRODUCTION

Defendant moves to dismiss the indictment with prejudice based on his allegations that law enforcement, acting in bad faith, failed to preserve and collect exculpatory evidence. For the reasons set forth below, the motion to dismiss is **DENIED**.

## STATEMENT

On October 4, 2011, defendant Wayland Gibson was indicted as a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). The instant motion seeks to dismiss that indictment. This order follows a motion and evidentiary hearing and full briefing. The following witnesses testified at the evidentiary hearing: Sergeant Daniel Manning, Inspector Daniel Silver, and Ruby Brown, defendant's mother.

On June 26, 2010, officers of the San Francisco Police Department conducted a warrantless search of the residence that comprised the lower unit of a residence known to the officers as 1679 Oakdale Avenue, San Francisco. At the time of the search, the officers believed that defendant and his brother, Kenneth Brown, lived in the lower unit of this residence. The

1 validity of the search is not at issue in this motion but is the subject of a separately filed motion to
2 suppress (Silver Decl. ¶¶ 3, 4; Reporter's Transcript 17, 22, 25, 26, 29).

3 During the search of the lower unit, Officer Daniel Silver (subsequently promoted to the
4 rank of inspector), observed a laundry bag in the front room of the lower unit. He searched the
5 contents of the laundry bag (RT 166–68). The bag contained men's laundry (RT 50). Officer
6 Silver found a 9-millimeter Glock and an extended gun magazine inside the pile of men's
7 laundry. The 9-millimeter Glock contained a loaded 17-round magazine. Officer Silver took
8 photographs of the firearm and the extended magazine and seized them using a pair of latex
9 glove. Officer Silver did not seize the contents of the laundry bag, other than the gun and
10 magazine (RT 168; Silver Decl. ¶ 8).

11 Officer Silver wore latex gloves when seizing the firearm and the extended magazine.
12 Officer Silver had been trained to wear latex gloves in all cases involving the collection of
13 firearms. And it was his practice in conducting investigations in gun cases to put on latex gloves
14 before seizing a firearm, unless there was a safety issue that required him to proceed otherwise.
15 Officer Silver understood that police procedures required him to wear latex gloves when seizing
16 contraband "to prevent the contamination of those items with [his] own fingerprints or DNA."
17 Officer Silver was aware of "no similar SFPD rule or protocol that requires officers to seize items
18 touching the contraband." As a matter of practice, for example, "when [he] uncovered firearms
19 under pillows or mattresses, it [had] not been [his] practice to seize those pillows or mattresses."
20 At the time of the search on June 26, he "did not contemplate that DNA recovered from the
21 weapon could be the result of transfer from the clothes in the laundry bag." Nor had he "read any
22 scientific studies relating to secondary transfers of DNA or [] been trained to collect all items that
23 have come into contact with contraband in a case that may involve DNA testing." At the time of
24 the search, he had not previously met defendant (Silver Decl. ¶¶ 9, 10).

25 A DNA sample from defendant was subsequently obtained, and DNA evidence from the
26 grip and trigger swabs of the gun seized on June 26, was submitted for testing. The DNA lab
27 analyzed the evidence and concluded that: "A mixture of at least four individuals was detected on
28 the grip and trigger swabs. Wayland Gibson is the major contributor to this mixture. The chance

2

that a random person unrelated to him could be similarly included is approximately one in 15 quintillion" (Dkt. No. 14 at 5).

**ANALYSIS**

Defense counsel asserts two theories in support of defendant's motion to dismiss the indictment with prejudice. *First*, that the contents of the laundry bag, which were not seized, were material, imposing a duty on the government to preserve the evidence. *Second*, that the contents of the laundry bag were "potentially useful," and that Officer Silver acted in bad faith when he did not preserve and collect the contents of the laundry bag. Each theory is addressed in turn.

1. **MATERIAL EVIDENCE.**

The government has a duty under due process to preserve evidence that is material and is of such a nature that the defendant cannot obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 488–89 (1984). Evidence is constitutionally material if it "possesses an exculpatory value that was apparent before the evidence was destroyed." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1087 (9th Cir. 2004); *United States v. Drake*, 543 F.3d 1080, 1090 (9th Cir. 2008) ("[t]he exculpatory value of an item of evidence is not 'apparent' when the evidence merely 'could have' exculpated the defendant"). "[T]he fact that the evidence may have proven exculpatory . . . does not render it per se material." *Martinez-Martinez*, 369 F.3d at 1087. Indeed, "the possibility that evidence could have exculpated a defendant if preserved and tested is insufficient to satisfy the standard of constitutional materiality in *Trombetta*." *Portee v. Alvarado*, 2011 U.S. Dist. LEXIS 102995, at *4–5 (N.D. Cal. 2011) (Seeborg, J.).

Defendant has not shown that the contents of the laundry bag were material, meaning they had apparent exculpatory value. Instead, defense counsel hypothesizes that had the contents of the laundry bag been tested for DNA, the results of the DNA test may have proven that there was a sufficient quantity of defendant's DNA on the contents of the laundry bag to transfer to the gun, thereby providing an alternative theory for how defendant's DNA got on the gun (Br. 4; Reply Br.

2). The exculpatory value of the contents of the laundry bag was not apparent. Materiality is, therefore, not proven.

### 2. POTENTIALLY USEFUL EVIDENCE.

Defense counsel's second theory in support of dismissing the indictment is that the contents of the laundry bag were "potentially useful" evidence and Officer Silver's failure to collect and preserve this evidence was in bad faith, and therefore, in violation of defendant's due process rights. Failure to preserve potentially useful evidence does not constitute a denial of due process unless a defendant can show bad faith on the part of the police in failing to preserve the potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The same standard applies to failure to collect potentially useful evidence. *Miller v. Vasquez*, 868 F.2d 1116, 1120–21 (9th Cir. 1989). Evidence is considered "potentially useful," where "no more can be said than that it could have been subjected to tests, the results of which might have exonerated defendant." *Youngblood*, 488 U.S. at 57.

Defense counsel contends that the contents of the laundry bag were at least potentially useful because there existed the "potential for inadvertent transfer of small amounts of DNA" from the contents of the laundry bag to the gun (Br. 2). Thus, at trial the defense could put forward a theory that the DNA on the gun was a result of transference, not defendant's possession. Because it is possible that such evidence *might* have exonerated defendant, the order now turns to the bad faith inquiry.

"The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56. *See Trombetta*, 467 U.S. at 488 (bad faith is "a conscious effort to suppress exculpatory evidence"); *Estrada*, 453 F.3d 1208, 1212–13 (9th Cir. 2006) (no bad faith because no "malicious intent"); *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997) (negligence is not sufficient to establish bad faith).

Defendant has not shown Officer Silver acted in bad faith. Officer Silver did not contemplate that the contents of the laundry bag had exculpatory value on the basis that DNA obtained from the contents could have been used to support a theory of secondary or tertiary

4

transfer at trial (Silver Decl. ¶¶ 9–10). Defense counsel contends that Officer Silver's decision to wear latex gloves before handling the firearm shows that he knew the evidentiary value of the gun "depended on collection and preservation in a manner that ensured no transfer of contamination would occur post-seizure," and that he therefore "knew that any DNA recovered from the weapon could be the result of transfer from the clothing from which the weapon was removed" (Br. 2–3). Thus, counsel argues that Officer Silver "knew the exclusive evidence which could exonerate" defendant was the contents of the laundry bag, and that to avoid exoneration, he opted to not collect and preserve "this obviously exculpatory evidence" (Br. 3). Defense counsel asserts that Officer Silver acted with malice, but there is no evidence in support.

Furthermore, Officer Silver's procedures of collection of evidence in this case, were consistent with his normal practice in gun cases (Silver Decl. ¶ 9). *See Trombetta*, 467 U.S. at 488 (finding officers were "acting in good faith and in accord with their normal practice). Officer Silver wore latex gloves because SFPD rules required him to do so (Silver Decl. ¶ 9). Defense counsel points to SFPD General Order 6.02 and the officer training manual regarding the collection of evidence, and states that Officer Silver did not comply with what was required of him. General Order 6.02 instructs that "[m]any items of physical evidence can be processed for latent fingerprints and/or examined for trace evidence," and that "it is important to gather potential physical evidence before it is lost or contaminate" (Balogh Reply Exh. I at 2:7, 3:7). The March 2010 San Francisco Police Department Field Training Manual for Officers, put in as a reply exhibit, stated, "not all evidence is visible" and "[t]he location of the firearm and related evidence (bullets, etc.) may have important investigative and reconstructive value. Document any pertinent details with notes, sketches and photos and book them as evidence if CSI is not responding" (Balogh Reply Exh. H at 2.4, 2.6). Even assuming Officer Silver did not comply with General Order 6.02 and the Training Manual, there is no evidence to show his purported noncompliance was done in bad faith, especially given the non-apparent exculpatory value of the contents of the laundry bag, which were found in a residence where Officer Silver believed defendant resided (Silver Decl. ¶ 6).

Finally, defense counsel attempts to establish bad faith by pointing to the fact that Officer Silver arrested defendant without a warrant one day after he was instructed not to do so. But this arrest occurred eleven months after the search at issue here. Indeed, at the time of the search, Officer Silver had never met defendant (Silver Decl. ¶ 9). Furthermore, at the evidentiary hearing, he testified that he did not have any personal animus toward defendant (RT 183).

Defendant has not shown that Officer Silver acted in bad faith in failing to preserve and/or collect the contents of the laundry bag, thus, no due process violation is shown. Defendant does not allege bad faith on the part of any other officers present during the search.

**3. SANCTIONS.**

Defense counsel contends that trial sanctions should be imposed due to the government's failure to collect and preserve exculpatory evidence. Specifically, counsel asks for the following instruction to be given to the jury (Br. 6):

> If you find that the [law enforcement authorities] allowed to be destroyed or lost any evidence whose content of quality are in issue, you may infer that the true fact is against the [Government's] interest.

To evaluate the need for sanctions, courts must balance "the quality of the Government's conduct and the degree of prejudice to the accused." *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (*en banc*) (Kennedy, J, concurring.), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499, 502 (9th Cir. 2008). "The government bears the burden of justifying its conduct and defendant bears the burden of demonstrating prejudice." *Ibid*.

Officer Silver acted consistent with his normal practice in gun cases in preserving and collecting the gun and the magazine using latex gloves. He was aware of no rule requiring him to collect all items touching contraband. Even General Order 6.02 recognizes that "it is often difficult to determine the amount of evidence that needs to be collected" (Balogh Reply Exh. I at 3:7). And the record offers no basis to conclude that Officer Silver was "negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions. *See Loud Hawk*, 628 F.2d at 1152.

The prejudice to defendant here is minimal. Even if defendant's DNA was found on the items in the laundry bag, this would further connect defendant to the firearm, which was also in

6

the bag.  And the transference theory, if believable to the jury, would require the jury to reach some understanding as to how transference resulted in defendant being the major contributor to the DNA mixture on the trigger and grip.  Moreover, a negative DNA test would not be exculpatory.  The prejudice to defendant is low.  Sanctions are not warranted.

## CONCLUSION

For the above-stated reasons, the motion to dismiss the indictment is **DENIED**.  This order does not hold or suggest that defense counsel may not bring the failure to preserve the bag and the clothes to the attention of the jury.

**IT IS SO ORDERED.**

Dated: April 3, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE